1
2
3
4
5

Nicole Lavallee (SBN 165755)
Michael Dark (SBN 179083)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
        mdark@bermantabacco.com

6

*Counsel for Plaintiff Plymouth County Retirement Association*

7

8

**UNITED STATES DISTRICT COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16
17

PLYMOUTH COUNTY RETIREMENT
ASSOCIATION, individually and on
behalf of all others similarly situated,

                    Plaintiff,

            v.

OUTSET MEDICAL, INC.,
LESLIE TRIGG, REBECCA
CHAMBERS, and NABEEL AHMED,

                    Defendants.

Case No.

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

CLASS ACTION

DEMAND FOR JURY TRIAL

18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff, Plymouth County Retirement Association ("Plaintiff"), by and through its attorneys, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Outset Medical, Inc. ("Outset" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, conference calls and postings on Outset's website; and (d) review of other publicly available information concerning the Company and the Individual Defendants (defined below).

## **NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of all persons or entities who purchased or otherwise acquired Outset securities between September 15, 2020, and August 7, 2024, inclusive (the "Class Period") against the Defendants seeking to pursue remedies under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (the "Exchange Act") and the rules and regulations promulgated thereunder, including Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5").

2. Outset is a medical technology company focused on kidney dialysis, the primary treatment for acute and chronic kidney failure. The Company's flagship product is the Tablo Hemodialysis System ("Tablo"). Tablo is a dialysis machine that purifies tap water and then artificially purifies and removes toxins from the blood of patients suffering from kidney failure. In October 2022, Outset introduced the TabloCart with Prefiltration ("TabloCart") as an accessory for the Tablo, intended to provide additional maneuverability and pre-filtration capabilities for poor water qualities.

3. Tablo is cleared by the U.S. Food and Drug Administration ("FDA") for use in the hospital, clinic or home setting. Tablo is not cleared by the FDA for Continuous Renal Replacement Therapy ("CRRT"), in which solute removal and fluid balance is managed continuously over 24 hours in a hospital.

4.      On July 7, 2023, after market hours, Outset disclosed that it had received a Warning Letter from the FDA which "assert[ed] that certain materials … on the Company's website promote continuous renal replacement therapy (CRRT), a modality outside of the current indications for the Tablo® Hemodialysis System" and asserted that TabloCart "requires prior 510(k) clearance for marketing authorization."

5.      On this news, Outset's stock price fell $1.20, or 5.9%, to close at $19.26 per share on July 10, 2023.

6.      On August 2, 2023, after market hours, Outset announced that it had paused the shipment of TabloCart pending the FDA's 510(k) clearance.

7.      On this news, Outset's stock price fell $1.97, or 10.2%, to close at $17.39 per share on August 3, 2023.

8.      On October 12, 2023, after market hours, the Company revealed that revenue growth had been significantly impacted by the FDA's warning letter.  Specifically, the Company issued a press release announcing preliminary third quarter 2023 financial results, as well as updated financial guidance for 2023 revenue, which reflected that "[g]rowth in the quarter was dampened by a larger-than-expected impact in the field from the recent FDA warning letter."

9.      On this news, the Company's share price fell $3.38, or 49.9%, to close at $3.39 per share on October 13, 2023.

10.      On August 7, 2024, after market hours, Outset released its second quarter 2024 financial results, significantly missing consensus estimates and lowering its full year 2024 revenue guidance by $39 million at the midpoint.  The Company disclosed it would be forced to take "clear steps to improve our execution" including "sales team and process restructuring." As a result, the Company revealed it would be unable to deliver on a post-approval sales ramp of TabloCart previously forecast.

11.      On this news, the Company's share price fell $2.33, or 68.5%, to close at $1.07 per share on August 8, 2024.

12.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business,

operations and prospects. Specifically, Defendants failed to disclose to investors that: (1) the TabloCart would require prior 510(k) clearance from the FDA for marketing authorization; (2) the Company had not obtained the required FDA clearance to market and sell the TabloCart; (3) as such, Outset would be forced to halt shipment of the TabloCart; (4) Outset had promoted continuous renal replacement therapy (or CRRT) as a modality within the FDA-approved indications for the Tablo, which was not the case; (5) Outset lacked the sales team and process to execute on the ramp of Tablo sales; (6) the Company's internal controls were inadequate and resulted in the improper marketing of Tablo and TabloCart and that the Company's SOX certifications were false and misleading when made; (7) the Company's reports and financial statements did not fairly present in all material respects the financial condition, including the reliance on improper marketing, that the revenue and growth reported therein was the result of undisclosed, illicit and unsustainable improper marketing; and (8) as a result of the foregoing, Defendants' positive statements about the Company's business, operations and prospects were materially misleading and/or lacked a reasonable basis.

13.     As a result of Defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Exchange Act (15 U.S.C. § 78aa). This Court has jurisdiction over Defendants because each Defendant has sufficient minimum contacts with this district, particularly since Outset's principal place of business is in this District.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts and omissions charged

herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this District.

17.    In connection with the acts, transactions and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications and the facilities of a national securities exchange.

## DIVISIONAL ASSIGNMENT

18.    Pursuant to Northern District of California Civil Local Rules 3-2(c) and 3-5(b) assignment to the San Jose Division of this district is proper because a substantial part of the events or omissions, which give rise to the claims asserted herein, occurred in Santa Clara County, California and Outset's principal place of business is located, in San Jose, California.

## PARTIES

19.    As set forth in its Certification attached as Exhibit A, Plaintiff purchased Outset securities during the Class Period and was damaged as a result.

20.    Defendant Outset is incorporated under the laws of Delaware and has its principal executive offices in San Jose, California.  Outset's common stock trades on the Nasdaq Stock Market (the "NASDAQ") under the ticker symbol "OM."

21.    Defendant Leslie L.  Trigg ("Trigg") has served as Outset's Chief Executive Officer ("CEO") at all relevant times and was elected as Chair of Outset's Board of Directors in 2022.

22.    Defendant Nabeel Ahmed ("Ahmed") has served as Outset's CFO since August 2021.  Ahmed joined Outset in May 2020 and served as a Vice President and Controller.  On July 1, 2021, the Company filed a Form 8-K reporting Ahmed had been appointed as the Company's Interim CFO.  In a subsequent Form 8-K filed with the SEC on August 5, 2021, the Company announced Ahmed had transitioned to the permanent role of CFO, Principal Financial Officer, and Principal Accounting Officer, effective July 30, 2021.

23.    Defendant Rebecca Chambers ("Chambers") was Outset's CFO at all relevant times until July 16, 2021.  In a Form 8-K filed with the SEC on July 1, 2021, the Company

announced Chambers notified the Company on June 28, 2021, of her decision to resign from Outset effective July 16, 2021.

24.    Defendants Trigg, Ahmed and Chambers (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations that were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein. The Company and the Individual Defendants are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

25.    Outset was founded in 2003 and is headquartered in San Jose, California.  In 2014, Tablo was cleared for use in patients with acute and/or chronic renal failure, with or without ultrafiltration, in the settings of an acute or chronic care facility under Section 510(k) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 C.F.R. § 807.81(a).  In March 2020, Tablo was cleared for home use under Section 510(k) of the FDCA.

26.    The 510(k) program is a marketing clearance process, pursuant to which Outset had permission to market Tablo and demonstrate that it was as safe and effective as another FDA-approved device.  Notably, significant modifications affecting the safety and/or efficacy of a device that has previously received 510(k) clearance may necessitate additional 510(k) applications and clearances.

27.    In the 510(k) clearance process, before a device may be marketed, the FDA must determine that a proposed device is substantially equivalent to a legally marketed predicate

device, which includes a device that has been previously cleared through the 510(k) process, a device that was legally marketed prior to May 28, 1976 (pre-amendments device), a device that was originally on the U.S. market pursuant to an approved Premarket Approval ("PMA") and later down-classified, or a 510(k)-exempt device.  To be substantially equivalent, the proposed device must have the same intended use as the predicate device, and either have the same technological characteristics as the predicate device or have different technological characteristics and not raise different questions of safety or effectiveness than the predicate device.  Clinical data are sometimes required to support substantial equivalence.  The FDA's 510(k) clearance process usually takes from three to twelve months but can last longer.

28.     Educational and promotional activities and training methods must comply with FDA and other applicable laws.  These laws include the prohibition of the promotion of a medical device for a use that has not been cleared or approved by the FDA.  Use of a device outside of its cleared or approved indications is known as "off-label" use.  If the FDA determines that educational and promotional activities or training constitutes promotion of an off-label use, it may request that a company modify its training or promotional materials or subject the company to regulatory or enforcement actions, including the issuance of warning letters, untitled letters, fines, penalties, injunctions or seizures.  It is also possible that other federal, state or foreign enforcement authorities might take action if they consider educational and promotional activities or training methods to constitute promotion of an off-label use, which could result in significant fines or penalties under other statutory authorities, such as laws prohibiting false claims for reimbursement.

29.     Outset commenced an initial public offering ("IPO") on or about September 15, 2020, selling 10.29 million shares of common stock to the public at a price of $27 per share.  In connection with the IPO, the Company filed a Registration Statement on Form S-1 on August 21, 2024, Amendment No. 1 to the Registration Statement on Form S-1/A on September 9, 2020, and a Form S-1MEF on September 14, 2020 (together, the "Registration Statement").  On September 16, 2024, the Company file a Prospectus on Form 424B4 (the "IPO Prospectus")

(together, the Registration Statement and IPO Prospectus are the "IPO Offering Documents"). Defendants Trigg and Chambers signed the IPO Offering Documents.

**Defendants' Materially False and Misleading
Statements Issued During the Class Period**

30.    The Class Period begins on September 15, 2020, when Outset's common stock began trading on the Nasdaq Global Select Market.  In the IPO Offering Documents, the Company touted Tablo as a "dialysis clinic on wheels and allows providers to standardize to a single technology platform from the hospital to the home."  The Company stated, in relevant part, that:

> Our technology is designed to elevate the dialysis experience for patients, and help providers overcome traditional care delivery challenges.  Requiring only an electrical outlet and tap water to operate, Tablo frees patients and providers from the burdensome infrastructure required to operate traditional dialysis machines.  The integration of water purification and on-demand dialysate production enables Tablo to serve as a dialysis clinic on wheels and allows providers to standardize to a single technology platform from the hospital to the home.

31.    The Company also represented that "Tablo is currently cleared by the United States Food and Drug Administration (FDA) for use in the hospital, clinic or home setting," and that its "policy is to refrain from statements that could be considered off-label promotion of Tablo."  The Company repeated these representations in its Quarterly Report on Form 10-Q ("Form 10-Q") for the quarterly period ended September 30, 2020 filed with the SEC on November 12, 2020 ("Q3 2020 Form 10-Q") (signed by Trigg and Chambers), Annual Report on Form 10-K ("Form 10-K") for fiscal year ended ("fye") December 31, 2020 filed with the SEC on March 22, 2021 ("2020 Form 10-K") (signed by Trigg and Chambers); Form 10-K for fye December 31, 2021 ("2021 Form 10-K") filed with the SEC on February 23, 2022 (signed by Trigg and Ahmed); Form 10-K for fye December 31, 2022 ("2022 Form 10-K") filed with the SEC on February 13, 2023 (signed by Trigg and Ahmed).

32.    In the IPO Offering Documents and its 2020 Form 10-K filed on March 22, 2021, Outset also touted "Tablo is the first and only fully integrated hemodialysis system that can be used to deliver treatment across all care settings from the ICU to home."

33.    On November 11, 2020, the Company issued a press release announcing third quarter results and stating that it had "[r]ecorded net revenue of $13.8 million in the third quarter

of 2020, a 423% increase compared to $2.6 million in the third quarter of 2019." In the press release Defendant Trigg stated, "Our commercial momentum continued to accelerate in the third quarter as we signed new contracts with some of the largest national and regional health systems in the country."

34.     On November 12, 2020, the Company filed its Q3 2020 Form 10-Q for the third quarter of 2020, which included Certifications Pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 ("SOX Certifications") signed by Defendants Trigg and Chambers, respectively, which stated:

1.     I have reviewed this Quarterly Report on Form 10-Q of Outset Medical, Inc.;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)     designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)     designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)     evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure

controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)     disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)     all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)     any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

35.     Outset filed signed SOX Certifications with all of its quarterly reports filed on Form 10-Q and annual reports filed on Form 10-K with the SEC during the Class Period. Defendants Trigg signed all SOX Certifications during the Class Period. Defendant Chambers signed SOX Certifications from the beginning of the Class Period until May 5, 2021. Defendant Ahmed signed all SOX Certifications from August 5, 2021 until the end of the Class Period.

36.     On March 9, 2021, the Company issued a press release announcing fourth quarter and full-year results and stating that it had "[r]ecorded net revenue of $17.2 million in the fourth quarter and $49.9 million for the full year of 2020, representing 143% and 231% increases respectively, over the corresponding periods of 2019." In the press release, Defendant Trigg stated, "In the fourth quarter our team continued to outperform while building a solid foundation for growth through 2021 and beyond."

37.     On May 5, 2021, the Company issued a press release announcing first quarter results and stating, "[r]ecorded net revenue of $22.9 million in the first quarter of 2021, a 219% increase compared to $7.2 million in the first quarter of 2020." In the press release, Defendant Trigg stated, "Our first quarter was marked by strong revenue performance, continued operational

execution, and substantial progress across our strategic initiatives, … Demand for Tablo is both increasing and extending beyond the acute and subacute care settings, with a growing number of customers preparing for home care programs.  With strong interest in Tablo, a robust backlog and clear visibility on the timing of console placements, we are confident in our positioning for consistent strong performance in 2021 and beyond."

38.     On August 5, 2021, the Company issued a press release announcing second quarter results and stating "[r]ecorded net revenue of $25.2 million in the second quarter of 2021, a 115% increase compared to $11.7 million in the second quarter of 2020."  In the press release, Defendant Trigg stated, "In the first half of 2021, we delivered best-in-class revenue growth and steady gross margin improvement driven by a team that is dedicated to, and united around, transforming the dialysis experience for patients and providers, … With new home console bookings up substantially in the second quarter, and both current and new customers purchasing Tablo for acute use, our integrated commercial strategy is working as expected.  We remain confident in our ability to execute on each of our key strategic initiatives for 2021 and in our long-term growth prospects."

39.     On November 3, 2021, the Company issued a press release announcing third quarter financial results and stating, "[r]ecorded net revenue of $26.3 million in the third quarter of 2021, a 91.3% increase compared to $13.8 million in the third quarter of 2020."  In the press release, Defendant Trigg stated, "Our strong third quarter performance further reinforces our confidence in our business and in our expectations for growth."

40.     In the Company's 2021 ESG Report dated November 7, 2021, the Company stated:

> Outset has adopted a promotional material procedure to define acceptable and unacceptable advertising, sales support, training, and other promotional practices for Outset medical devices in the United States.  Included in this procedure is Outset's policy that all claims with respect to Outset products must be consistent with approved labeling, with the data submitted to the FDA to obtain 510(k) clearance and/or substantiated with appropriate evidence (*i.e.*, instructions-for-use, verification and validation testing, clinical study report, or any other report requiring a similar rigorous process of review and approval).  In addition, without exception, promotional material may be neither false nor misleading (either in terms of a specific product claim or the overall net impression conveyed by the promotional material) and must comply with all specific conditions of approval for the product being promoted.  Furthermore, promotional materials for a cleared or

approved product may not promote, discuss, or refer to uncleared, unapproved, or off-label use.

41.     On February 16, 2022, the Company issued a press release reporting fourth quarter results and stating, "[r]ecorded net revenue of $28.2 million in the fourth quarter of 2021, a 63.2% increase compared to $17.2 million in the fourth quarter of 2020, and $102.6 million for the full year of 2021, representing an increase of 105.5% compared to $49.9 million for 2020."  In the press release, Defendant Trigg stated, "Our entire team contributed to an exceptional 2021, driving record revenue growth, meaningful progress toward our long-term gross margin goal and excellent visibility into 2022 … Our established relationships with 7 of the 8 largest national health systems and one-third of the largest 100 regional health systems puts us in a strong position for growth this year in both the acute and home settings."

42.     On May 4, 2022, the Company issued a press release reporting first quarter results and stating, "[r]ecorded net revenue of $30.6 million in the first quarter of 2022, a 33.3% increase compared to $22.9 million in the first quarter of 2021 and an 8.5% increase compared to $28.2 million in the fourth quarter of 2021."  In the press release, Defendant Trigg stated, "The first quarter of 2022 was marked by strong revenue growth and gross margin expansion, which resulted from the momentum we see among both acute care customers and providers expanding access to Tablo at Home, … As interest for Tablo accelerates across all market segments, we continued to expand gross margins, invest in innovation, and deliver consistent and predictable financial and operational results, increasing our confidence for sustained strong performance through 2022 and beyond."

43.     On August 1, 2022, the Company issued a press release reporting "[r]evenue for the second quarter totaled $25.1 million, in line with guidance provided on June 13, 2022."  In the press release, Defendant Trigg stated, "[a]s we look to the second half of the year, we see no change in underlying demand for Tablo."

44.     In the same August 1, 2022 press release, the Company announced that it had resumed shipment of Tablo Systems for home use because the FDA had approved its 510(k) submission.  In a press release, the Company stated, in relevant part:

> Outset Medical, Inc.  (Nasdaq: OM) ("Outset" or the "Company"), a medical technology company pioneering a first-of-its-kind technology to reduce the cost

and complexity of dialysis, today announced clearance by the Food and Drug Administration of its previously disclosed 510(k) submission and resumption of Tablo® Hemodialysis System shipments for home use.

The Company also reported financial results for the second quarter ended June 30, 2022 and provided financial guidance for 2022.  Revenue for the second quarter totaled $25.1 million, in line with guidance provided on June 13, 2022.  Gross margin for the second quarter was 15.1%, compared to 4.2% in the second quarter of 2021 and 14.5% in the first quarter of 2022.

"We are pleased to begin supporting new patients in the home again and helping them achieve autonomy and control over where and when they dialyze," said Leslie Trigg, Chair and Chief Executive Officer.  "As we look to the second half of the year, we see no change in underlying demand for Tablo.  However, we have reflected in our guidance the staffing and inflationary pressures our provider customers are facing, as well as the work we need to do to regain commercial momentum following release of the Tablo ship hold."

45.     On August 2, 2022, the Company filed with the SEC its Form 10-Q for the fiscal period ended June 30, 2022 ("Q2 2022 Form 10-Q"), affirming the previously reported financial results.  The report stated the following regarding the Company's sales practices and FDA approval:

In late July 2022, the FDA cleared our 510(k) application of Tablo for patient use in the home and we have resumed marketing and shipping Tablo for home use.

Driving adoption of Tablo in the acute care setting has been our primary focus to date.  We have invested in growing our economic and clinical evidence, built a veteran sales and clinical support team with significant expertise, and implemented a comprehensive training and customer experience program.  Our experience in the acute care market has demonstrated Tablo's clinical flexibility and operational versatility, while also delivering meaningful cost savings to the providers.  We plan to continue leveraging our commercial infrastructure to broaden our installed base in the acute care market as well as driving utilization and fleet expansion with our existing customers.

46.     On November 8, 2022, the Company issued a press release reporting third quarter financial results and stating

- Recorded net revenue of $27.8 million in the third quarter of 2022, a 5.5% increase compared to $26.3 million in the third quarter of 2021 and a 10.8% increase compared to $25.1 million in the second quarter of 2022

- Achieved gross margin for the third quarter of 2022 of 15.6%, compared to 11.2% in the third quarter of 2021 and 15.1% in the second quarter of 2022

- Resumed shipments to new home patients, and grew the Tablo home patient base beyond initial expectations for the third quarter

•      Awarded five-year contract by the Department of Veterans Affairs, enabling Tablo to be sold into the 106 VA hospitals across the U.S. as well as into home settings

* * *

**Full Year 2022 Financial Guidance**

Outset now projects revenue for 2022 of $111 million to $113 million, which represents 8% to 10% growth over 2021. This updated guidance compares to prior 2022 guidance of $105 million to $110 million.

47.    In the press release, Defendant Trigg stated, "Our third quarter results reflect the value Tablo is delivering in both the acute and home settings, with console shipments exceeding our initial expectations … we believe our continued expansion in the acute setting and our strong start to rebuilding the home patient pipeline reflects patient preference for Tablo and strong demand across end markets."

48.    Also, on November 8, 2022, during an earnings call regarding the Company's third quarter 2022 financial results, Defendant Trigg announced the addition of the TabloCart to Outset's line of products, stating:

To that end, we are pleased to introduce TabloCart, which is a new accessory for Tablo. TabloCart provides additional maneuverability around the hospital and incremental pre-filtration capabilities for sites that suffer from water quality that is far worse than the national drinking water standards. TabloCart will be sold separately at an expected margin accretive ASP. We closed Q3 exceeding our internal projections for TabloCart orders indicating strong early demand for this innovative accessory.

In summary, our strong Q3 was driven by significant expansion in the acute setting and a home pipeline that is rebuilding ahead of expectations. It is clear to us that Tablo remains a highly differentiated solution in one of the largest, most expensive recession proof areas of healthcare. Our performance reflects the truly incredible Outset team who I would like to thank for their courage, commitment, and conviction in all they do every day to advance our mission.

49.    On November 9, 2022, the Company filed with the SEC its Form 10-Q for the fiscal period ended September 30, 2022 ("Q3 2022 Form 10-Q"), affirming the previously reported financial results. The report stated the following regarding the Company's sales practices and FDA approval:

In May 2022, we implemented a shipment hold on the distribution and marketing of Tablo for use in the home environment pending the FDA's review and clearance of a 510(k) application we submitted for changes made since the device's original March 2020 clearance.

* * *

In late July 2022, the FDA cleared our 510(k) application of Tablo for patient use in the home and we resumed marketing and shipping Tablo for home use.

Driving adoption of Tablo in the acute care setting has been our primary focus to date. We have invested in growing our economic and clinical evidence, built a veteran sales and clinical support team with significant expertise, and implemented a comprehensive training and customer experience program.

50. On January 9, 2023, the Company issued a press release announcing preliminary financial results for fourth quarter and fiscal year ended December 31, 2022, as well as guidance for fiscal 2023, stating in relevant part:

- Revenue in the fourth quarter is expected to be approximately $31.5 million, a 13% increase compared to $27.8 million in the third quarter of 2022

- Revenue for 2022 is expected to be approximately $115 million, a 12% increase compared to $102.6 million in 2021

- Period-end installed base increased 54% year-over-year to approximately 4,000 Tablo® Hemodialysis Systems, including 3,200 with acute- and sub-acute care providers and a more than doubling of units with home providers to nearly 800

* * *

Outset expects 2023 revenue to be between $140 million to $150 million, growing approximately 22% to 30% over expected revenue for 2022. Non-GAAP gross margin is expected to expand to approximately 20% for the full year 2023 and exit the year in the mid-20% range for the fourth quarter of 2023.

51. On February 13, 2023, the Company issued a press release announcing the Company's financial results for the fourth quarter and year ended December 31, 2022, stating in relevant part:

- Recorded net revenue of $32.0 million in the fourth quarter, a 15.3% increase compared to $27.8 million in the third quarter, and a 14.0% increase compared to $28.2 million in the fourth quarter of 2021. Revenue for the full year was $115.4 million, an increase of 12.4% compared to $102.6 million in 2021

- Achieved gross margin for the fourth quarter of 16.5% (17.1% on a non-GAAP basis), compared to 11.8% (12.0% on a non-GAAP basis) in the fourth quarter of 2021. Gross margin for the full year was 15.5% (16.1% on a non-GAAP basis), an increase of more than 800 basis points over 2021

* * *

**Full Year 2023 Financial Guidance**

Outset reaffirmed its previously provided guidance for 2023, including revenue of $140 million to $150 million, growing approximately 22% to 30% over 2022, and non-GAAP gross margin of approximately 20% for 2023, exiting the year in the mid-20% range for the fourth quarter.

52.     On February 13, 2023, the Company filed its 2022 Form 10-K with the SEC, affirming the previously reported financial results.  The report stated the following regarding the TabloCart and the Company's sales practices:

Tablo is an FDA-cleared single enterprise solution for hemodialysis, comprised of a compact console with integrated water purification, on-demand dialysate production and advanced software and connectivity capabilities.

* * *

The Tablo system is comprised of the following components:

* * *

We recently introduced TabloCart, a non-medical accessory for the Tablo Hemodialysis System that provides added maneuverability and optional prefiltration storage.

* * *

Driving adoption of Tablo in the acute care setting has been our primary focus to date.  We have invested in growing our economic and clinical evidence, built a veteran sales and clinical support team with significant expertise, and implemented a comprehensive training and customer experience program.

* * *

We sell our solution through our direct sales organization, which covers most major metropolitan markets in the United States.  Our sales organization is comprised of our capital sales team, responsible for generating new customer demand for Tablo, and our clinical sales team, responsible for driving utilization and fleet expansion of Tablo consoles at existing customer sites.

* * *

We believe the ability to leverage one team to serve both markets will result in significant productivity and cost optimization as we continue to scale our business.

53.     During an earnings call on February 13, 2023, Defendant Trigg stated:

From a product innovation perspective, last quarter was our first full quarter in market with TabloCart, a new accessory that provides additional maneuverability around the hospital and incremental pre-filtration capabilities for sites with water quality that is far worse than the national drinking water standards.  As a reminder, TabloCart is sold separately at a gross margin accretive ASP.  Since its launch in Q3, we've been pleased with the strong demand and positive reaction from customers.

54.     During the same earnings call, Defendant Ahmed stated:

Our fourth quarter revenue increased approximately 15.3% sequentially and 13.7% year-over-year to $32 million with a year-over-year change driven primarily by higher consumables revenue and higher service and other revenue.  This uptick in recurring revenue is one of the benefits of our expanded installed base and continues to be one of the key drivers of gross margin expansion.

Product revenue was up 21.3% from the prior quarter and increased 11.5% year-over-year to $26.4 million.  Console revenue grew 22.8% from the third quarter and increased by 1.5% year-over-year to $18.4 million.  We saw console ASPs increase again year-over-year, driven primarily by the ongoing demand for Tablo XT and by demand TabloCart, our new accessory launched in the fourth quarter of 2022.

* * *

[W]e have absolutely seen ASP increases from the XT attach, which is again adding value to our customers instead of monetizing that value, which we like.  We've also seen TabloCart be a big driver or be a driver rather of ASP sort of lift in the quarter here and are really pleased with the performance there.

The one thing, we have also talked a lot about the fact that we haven't had to discount very heavily in our past, which we view as again, a testament to Tablo's economic value proposition.  So pricing, we have no complaints about pricing and pricing is favorable, works favorably for us.

55.     On May 3, 2023, the Company issued a press release announcing first quarter 2023 financial results for the quarter ended March 31, 2023, which reported the Company's quarterly revenue and an updated Full Year 2023 guidance, and stated in relevant part:

•       Recorded net revenue of $33.5 million in the first quarter, a 9.5% increase compared to $30.6 million in the first quarter of 2022, and a 4.6% increase compared to $32.0 million in the fourth quarter of 2022

•       Achieved gross margin for the first quarter of 19.2% (20.3% on a non-GAAP basis), compared to 14.5% (14.8% on a non-GAAP basis) in the first quarter of 2022

* * *

**Full Year 2023 Financial Guidance**

Outset now projects revenue for 2023 to range from $144 million to $150 million, which represents approximately 25% to 30% growth over the Company's fiscal year 2022 revenue.  This updated guidance compares to prior 2023 revenue guidance of $140 million to $150 million.  In addition, the Company expects gross margin for the year to be in the low-20% range, up from its prior guidance of approximately 20%, and exiting the fourth quarter in the mid-20% range.

56.     On May 3, 2023, during an earning call, Defendant Trigg stated:

Another important element of our commercial strategy is to drive utilization across the installed base, and we were pleased to see positive trends in treatment volume during the quarter, in line with our expectations.  We also saw ASPs rise, both on consoles and consumables, which serves as strong validation of Tablo's clinical and economic value proposition versus our competitors.  Our ASPs benefited again from better-than-expected uptake of Tablo add-ons, including good early demand for our TabloCart new product accessory.

\* \* \*

From a product innovation standpoint, we are very pleased with demand for TabloCart, a new product accessory we introduced in Q3 of last year that provides additional maneuverability around the hospital, and incremental water prefiltration capabilities.  TabloCart is sold separately and is gross margin accretive ASP and is proving to be a valuable solution to many of our acute care customers.

57.     On May 4, 2023, the Company filed with the SEC its Form 10-Q for the period ended March 31, 2023 ("Q1 2023 Form 10-Q"), affirming the previously reported financial results.  The report stated the following regarding the Company's sales practices:

Tablo is cleared by the FDA for use in the hospital, clinic, or home setting.

\* \* \*

In late July 2022, the FDA cleared our 510(k) application of Tablo for patient use in the home and we resumed marketing and shipping Tablo for home use.

\* \* \*

We primarily sell our solutions through our direct sales organization, which covers most major metropolitan markets in the United States.  Our sales organization is comprised of our capital sales team, responsible for generating new customer demand for Tablo, and our clinical sales team, responsible for driving utilization and fleet expansion of Tablo consoles at existing customer sites.

\* \* \*

We believe the ability to leverage one team to serve both markets will result in significant productivity and cost optimization as we continue to scale our business.

58.     In the Company's 2023 ESG Report dated June 30, 2023, the Company stated:

Outset has adopted an ethical marketing procedure that defines acceptable and unacceptable advertising, sales support, training, and other promotional practices for Outset medical devices in the United States.  Included in this procedure is Outset's policy that all claims with respect to Outset products must be consistent with approved labeling, with the data submitted to the FDA to obtain 510(k) clearance and/or substantiated with appropriate evidence (*i.e.*, instructions-for-use, verification and validation testing, clinical study report, or any other report requiring a similar rigorous process of review and approval).

In addition, without exception, promotional material or statements made by Outset sales representatives may not promote, discuss, or refer to uncleared, unapproved,

or off-label use.  This means that all promotional activities may be neither false nor misleading (either in terms of a specific product claim or the overall net impression conveyed by the promotional material) and must comply with all specific conditions of approval for the product being promoted.

59.    The above statements identified in ¶¶ 30-58 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that: (1) the TabloCart would require prior 510(k) clearance from the FDA for marketing authorization; (2)  the Company had not obtained the required FDA clearance to market and sell the TabloCart; (3) as such, Outset would be forced to halt shipment of the TabloCart; (4) Outset had promoted continuous renal replacement therapy (or CRRT) as a modality within the FDA-approved indications for the Tablo, which was not the case; (5) Outset lacked the sales team and process to execute on the ramp of Tablo sales; (6) the Company's internal controls were inadequate and resulted in the improper marketing of TabloCart and improper promotion of Tablo for CRRT and that the Company's SOX certifications were false and misleading when made; (7) the Company's reports and financial statements did not fairly present in all material respects the financial condition, including the reliance on improper marketing, that the revenue and growth reported therein was the result of undisclosed, illicit and unsustainable improper marketing; and (8) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**The Truth Begins To Be Revealed**

60.    The truth began to emerge on July 7, 2023, after market hours, when Outset disclosed that it had received a Warning Letter from the FDA.  Specifically, the Company filed a Form 8-K with the SEC disclosing:

On July 6, 2023, Outset Medical, Inc.  (the "Company") received a Warning Letter, dated July 5, 2023 (the "Warning Letter"), from the United States Food and Drug Administration (the "FDA").

As previously disclosed by the Company in its Annual Report on Form 10-K filed on February 13, 2023, the FDA issued an FDA Form-483 identifying four inspectional observations resulting from an FDA inspection that concluded February 10, 2023.  The Company provided its response plan to the FDA on March 3, 2023, and has since completed the associated remediation workstreams to fully address these observations.

The Warning Letter raises two additional observations. The first observation asserts that certain materials reviewed by the FDA and found on the Company's website promote continuous renal replacement therapy (CRRT), a modality outside of the current indications for the Tablo® Hemodialysis System. The Company believes this concern has been effectively addressed through labeling and promotional changes already underway.

The second observation asserts that the TabloCart with Prefiltration (the "TabloCart"), requires prior 510(k) clearance for marketing authorization. TabloCart, an accessory to the Tablo System, launched in the third quarter of 2022 and sales to date have not been material to the Company's financial results. The Company intends to work collaboratively with the FDA to resolve this observation, including potentially submitting a 510(k) on TabloCart.

The Warning Letter does not request the restriction of the manufacture, production or shipment of the Tablo System in the United States nor does it request the withdrawal of the Tablo System from the U.S. marketplace.

The Company intends to fully cooperate with the FDA, including by responding within 15 business days, to expeditiously and completely resolve the Warning Letter. The Company cannot, however, give any assurances that the FDA will be satisfied with the Company's actions taken in response to the matters raised in the Warning Letter. The Company also cannot give any assurances as to the timing of the resolution of such matters.

61.    On this news, Outset's stock price fell $1.20, or 5.9%, to close at $19.26 per share on July 10, 2023.

62.    On July 18, 2024, the FDA Warning Letter was published on the FDA's website. The FDA Warning Letter stated:

**Unapproved Device Violations**

1.    The TabloCart with Prefiltration is adulterated under section 501(f)(1)(B) of the Act, 21 U.S.C. § 351(f)(1)(B), because your firm does not have an approved application for premarket approval (PMA) in effect pursuant to section 515(a) of the Act, 21 U.S.C. § 360e(a), or an approved application for an investigational device exemption under section 520(g) of the Act, 21 U.S.C. § 360j(g). The device is also misbranded under section 502(o) the Act, 21 U.S.C. § 352(o), because your firm did not notify the agency of its intent to introduce the device into commercial distribution, as required by section 510(k) of the Act, 21 U.S.C. § 360(k), and 21 CFR 807.81(a)(3)(i).

You have not submitted any premarket notification to the Agency for the TabloCart with Prefiltration. However, the evidence and marketing materials reviewed at the inspection and found on your website [www.outsetmedical.com] on March 15, 2023, indicate that the TabloCart with Prefiltration is a device. For example, your materials state that the TabloCart with Prefiltration is used for "prefiltration"; has "[t]hree customizable filter configurations [to] enable added filtration of carbon and sediment, depending on a facility's incoming water quality"; and is intended to be used with your Tablo Hemodialysis System.

It appears that the TabloCart with Prefiltration could be classified under 21 CFR 876.5665 (Water purification system for hemodialysis), a Class II device type subject to premarket notification:

"(a) Identification.  A water purification system for hemodialysis is a device that is intended for use with a hemodialysis system and that is intended to remove organic and inorganic substances and microbial contaminants from water used to dilute dialysate concentrate to form dialysate.  This generic type of device may include a water softener, sediment filter, carbon filter, and water distillation system."

TabloCart with Prefiltration appears to meet this definition because:

o      It is intended to be used with a Hemodialysis System

o      It is intended to remove organic and inorganic substances from water used to dilute dialysate concentrate to form dialysate

The TabloCart with Prefiltration is intended to improve the incoming water quality and lower the pressure specifications for the Tablo Hemodialysis System to include water that exceeds (b)(4).  Inadequate filtration of lower quality incoming water may result in adverse effects arising from organic and inorganic contaminants that might be found in improperly prepared dialysis fluid.  As noted above, your firm is marketing this device without clearance or premarket approval.

For a device requiring premarket approval, the notification required by section 510(k) is deemed satisfied when a PMA is pending before the FDA [21 CFR 807.81(b)].  The kind of information that your firm needs to submit in order to obtain approval or clearance for the devices is described on the Internet at http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/Howt oMarketYourDevice/default.htm.  The FDA will evaluate the information that your firm submits and decide whether the product may be legally marketed.

2.      The Tablo Hemodialysis System is adulterated under section 501(f)(1)(B) of the Act, 21 U.S.C. § 351(f)(1)(B), because your firm does not have an approved application for premarket approval (PMA) in effect pursuant to section 515(a) of the Act, 21 U.S.C. § 360e(a), or an approved application for an investigational device exemption under section 520(g) of the Act, 21 U.S.C. § 360j(g).  The device is also misbranded under section 502(o) the Act, 21 U.S.C. § 352(o), because your firm did not notify the agency of its intent to introduce the device into commercial distribution, as required by section 510(k) of the Act, 21 U.S.C. § 360(k), and 21 CFR 807.81(a)(3)(i).

You currently have clearance for the Tablo Hemodialysis System under K223248 for the following indications:

"The Tablo Hemodialysis System is indicated for use in patients with acute and/or chronic renal failure, with or without ultrafiltration, in an acute or chronic care facility or in the home.  Treatments must be administered under a physician's prescription and observed by a trained individual who is considered competent in the use of the device.  Treatment types available include Intermittent Hemodialysis (IHD), Sustained Low Efficiency

Dialysis (SLED/ SLEDD), Prolonged Intermittent Renal Replacement Therapy (PIRRT), and Isolated Ultrafiltration."

However, the evidence reviewed at the inspection and marketing materials found on your website [www.outsetmedical.com] on May 11, 2023, show promotion of the Tablo Hemodialysis System for continuous renal replacement therapy (CRRT) treatment.  For example, materials on your website state that two large hospitals converted to a program consisting solely of the Tablo Hemodialysis System and state, "This major conversion eliminated the need for several types of dialysis machines for different clinical needs, including intermittent hemodialysis (IHD) in the dialysis unit and continuous renal replacement therapy (CRRT) in critical care." Other materials on your website state that multiple hospitals who had established CRRT treatment programs "converted those CRRT programs over to Tablo with Extended Therapy" and states, "They also replaced their CRRT machines with Tablo with XT…"

We evaluated the FDA databases and did not find documentation that you have a cleared 510(k) or a premarket notification in-house for an Indications for Use that includes CRRT treatment.  In addition, we note that during review of K223248, you confirmed that CRRT is distinct from the cleared indications for use, device specifications, and treatment modalities for the Tablo Hemodialysis System, and that PIRRT transitions to CRRT at (b)(4) of use1.  Patients who require CRRT are typically hospitalized with acute illness resulting in acute kidney injury and possible severe hemodynamic instability, and the devices that provide CRRT treatment have unique features to enable continuous treatment (> 24 hours) for this patient population.  Systems that cannot safely and reliably perform CRRT raise serious public health concerns when used for CRRT treatment, because failure of dialysis systems performing CRRT may result in fluid and electrolyte imbalances, inadequate ultrafiltration, infection, and patient harm/death.  This change represents a significant modification outside the scope of the K223248 clearance that could significantly affect safety or effectiveness, resulting in a new device such that a separate, additional 510(k) premarket notification must be submitted [see 21 CFR 807.81(a)(3)(i)].  Thus, the sale of the Tablo Hemodialysis System for CRRT is unlawful.

63.     On August 2, 2023, after the market closed, in connection with its second quarter 2023 financial results, Outset issued a press release announcing that it had paused the shipment of TabloCart, pending the FDA's 510(k) clearance.  The Company also stated that it expected its 2023 revenue to be at the low end of its previously projected range as a result of the shipment pause.  Specifically, the Company stated, in relevant part:

The Company also announced it has paused the shipment of TabloCart with Prefiltration, an accessory for the Tablo System, pending the Food and Drug Administration's clearance of a 510(k) the Company plans to submit later this month.

"Since receiving the Warning Letter on July 6, we have made the decision to file a 510(k) for TabloCart with Prefiltration and pause distribution of the product until a 510(k) clearance has been granted," added Trigg.  "As we look ahead to the second

half of the year, we expect our strong momentum both in the acute and home end markets to continue to drive the business."

\* \* \*

Outset reiterated its 2023 revenue guidance range of $144 million to $150 million, and now expects to be at the low end of this range as a result of the shipment pause for TabloCart with Prefiltration. The Company reaffirmed its gross margin guidance for the year to be in the low-20% range, exiting the fourth quarter in the mid-20% range.

64.    On this news, Outset's stock price fell $1.97, or 10.2%, to close at $17.39 per share on August 3, 2023.

65.    On August 3, 2023, the Company filed with the SEC its Form 10-Q for the period ended June 30, 2023 ("Q2 2023 Form 10-Q"), affirming the previously reported financial results. The report stated the following regarding the Company's sales practices:

Although we evaluated TabloCart with Prefiltration prior to marketing and distributing the product and concluded that no marketing authorization was necessary, we have paused distribution of TabloCart with Prefiltration pending the FDA's review and clearance of the 510(k) application we plan to submit.

\* \* \*

Driving adoption of Tablo in the acute care setting has been our primary focus to date. We have invested in growing our economic and clinical evidence, built a veteran sales and clinical support team with significant expertise, and implemented a comprehensive training and customer experience program. Our experience in the acute care market has demonstrated Tablo's clinical flexibility and operational versatility, while also delivering meaningful cost savings to the providers. We plan to continue leveraging our commercial infrastructure to broaden our installed base in the acute care market, as well as driving utilization and fleet expansion with our existing customers.

66.    On October 12, 2023, after the market close, Outset issued a press release reporting preliminary third quarter results. In the press release, the Company stated that preliminary revenue for the third quarter was $30.4 million, and Outset "now expects revenue for 2023 to be approximately $130 million."

67.    According to the Company, "Growth in the quarter was dampened by a larger-than-expected impact in the field from the recent FDA warning letter, and early signs of a more cautious outlook on capital spending that we see as a headwind continuing through the fourth quarter."

68.    In the same October 12, 2023 press release, the Company revealed that revenue growth had been significantly impacted by the FDA's warning letter.  Specifically, the Company updated financial guidance for 2023 revenue, which reflected that "[g]rowth in the quarter was dampened by a larger-than-expected impact in the field from the recent FDA warning letter."  The press release stated, in relevant part:

> Preliminary revenue for the third quarter was $30.4 million, a 9% increase over revenue of $27.8 million in the third quarter of 2022.  Outset now expects revenue for 2023 to be approximately $130 million.  Preliminary gross margin for the third quarter was 23.6%, or 25.6% on a non-GAAP basis, compared to 16.4% on a non-GAAP basis in the third quarter of 2022.  Total cash, including restricted cash, cash equivalents and short-term investments, was $197 million as of Sept.  30, 2023.

> "Growth in the quarter was dampened by a larger-than-expected impact in the field from the recent FDA warning letter, and early signs of a more cautious outlook on capital spending that we see as a headwind continuing through the fourth quarter," said Leslie Trigg, Chair and Chief Executive Officer.  "Importantly, we did not see deals fall out of our pipeline and our economic value proposition remains resonant and differentiated.  Our confidence around generating sustained long-term growth and reaching profitability remains high."

69.    On this news, the Company's share price fell $3.38, or 49.9%, to close at $3.39 per share on October 13, 2023

70.    On November 7, 2023, after the market close, the Company issued a press release announcing third quarter results.  The press release stated, in relevant part:

> Revenue for the third quarter was $30.4 million, a 9% increase over revenue of $27.8 million in the third quarter of 2022, and gross margin was 23.6%, or 25.6% on a non-GAAP basis, compared to 16.4% on a non-GAAP basis in the third quarter of 2022.

* * *

**Full Year 2023 Financial Guidance**

Outset reiterated its 2023 revenue guidance of approximately $130 million and its previous gross margin guidance for the year to be in the low-20% range, exiting the fourth quarter in the mid-20% range.

71.    During a conference call that same day, the Company stated:

[W]e're still facing and would expect to face in Q4 some of the competitive activity around TabloCart not being available by our choice and some competitive noise making around the other aspect of the warning letter around some case studies that were on our website, we feel that we have fully satisfied the FDA's concerns around the website.  We feel that we have fully satisfied the FDA's concerns around the website.  And, of course, we've filed an 510(k) on TabloCart.

72.    On November 8, 2023, the Company filed with the SEC its Form 10-Q for the period ended September 30, 2023 ("Q3 2023 Form 10-Q"), affirming the previously reported financial results.  The report stated the following regarding the Company's sales practices:

First, although we evaluated TabloCart with Prefiltration prior to marketing and distributing the product and concluded that no marketing authorization was necessary, we paused distribution of TabloCart with Prefiltration pending the FDA's review and clearance of a 510(k) application.

\* \* \*

We primarily sell our solutions through our direct sales organization, which covers most major metropolitan markets in the United States.  Our sales organization is comprised of our capital sales team, responsible for generating new customer demand for Tablo, and our clinical sales team, responsible for driving utilization and fleet expansion of Tablo consoles at existing customer sites.  In addition, our field service team provides maintenance services and product support to Tablo customers.  Our field sales and service teams represent 45% of our total full-time employees as of September 30, 2023.  The same sales organization and field service team drive Tablo penetration in both the acute and home markets.  We believe the ability to leverage one team to serve both markets will result in significant productivity and cost optimization as we continue to scale our business.

73.    On this news, Outset's stock price fell $0.62, or 14.4%, to close at $3.69 per share on November 8, 2023.

74.    On January 8, 2024, the Company issued a press release which announced unaudited fourth quarter and 2023 revenue and provided 2024 revenue and gross margin guidance.  The press release reported "revenue for 2023 to $130 million, a 13% increase compared to $115 million in 2022" and provided 2024 guidance which stated, in relevant part:

**2024 Guidance**

Outset expects 2024 revenue to be between $145 million to $153 million, growing 12% to 18% over unaudited revenue for 2023 based on the assumptions previously disclosed.  Non-GAAP gross margin is expected to expand to the low-30% range for the full year 2024 and exit the year in the mid-30% range for the fourth quarter of 2024.

75.    On February 21, 2024, the Company issued a press release announcing financial results for the fourth quarter and year ended December 31, 2023.  The press release stated, in relevant part, the following concerning the Company's financial results and full year 2024 guidance:

- Recorded net revenue of $30.5 million in the fourth quarter, bringing 2023 revenue to $130.4 million, a 13% increase compared to $115.4 million in 2022.

- Increased gross margin in the fourth quarter by nearly 900 basis points from the prior-year period. Fourth quarter gross margin reached 25.3% (26.7% on a non-GAAP basis) compared to 16.5% (17.1% on a non-GAAP basis) in the fourth quarter of 2022. Gross margin for the full year was 22.2% (23.6% on a non-GAAP basis) compared to 15.5% (16.1% on a non-GAAP basis) in 2022.

* * *

**Full Year 2024 Financial Guidance**

Outset reaffirmed its previously provided guidance for 2024, including revenue of $145 million to $153 million, growing 12% to 18% over 2023, and non-GAAP gross margin in the low-30% range for 2024, exiting the year in the mid-30% range for the fourth quarter.

76.    On February 21, 2024, the Company filed with the SEC its Form 10-K for the fye December 31, 2023 ("2023 Form 10-K"), affirming the previously reported financial results. The Company stated, in relevant part, as follows:

Driving adoption of Tablo in the acute setting has been our primary focus since Tablo's clearance by the FDA for use in an acute or chronic care facility in September 2014. We have invested in growing our economic and clinical evidence, built veteran field service, sales and clinical support teams with significant expertise, and implemented a comprehensive training and customer experience program. Our experience in the acute market has demonstrated Tablo's clinical flexibility and operational versatility, while also delivering meaningful cost savings to the providers. We plan to continue leveraging our commercial infrastructure, including our sales, field service and marketing teams, to broaden our installed base in the acute care market, as well as driving utilization and fleet expansion with our existing customers.

* * *

We primarily sell our solutions through our direct sales organization, which covers most major metropolitan markets in the United States. Our sales organization is comprised of our capital sales team, responsible for generating new customer demand for Tablo, and our clinical sales team, responsible for driving utilization and fleet expansion of Tablo at existing customer sites. In addition, our field service team provides maintenance services and product support to our customers. Our field sales and service teams represent 48% of our total full-time employees as of December 31, 2023. The same sales organization and field service team drive Tablo penetration in both the acute and home markets. We believe the ability to leverage one team to serve both markets will result in significant productivity and cost optimization as we continue to scale our business.

* * *

If we fail to retain our sales and marketing personnel, fail to increase our sales and marketing capabilities or develop broad awareness of Tablo in a cost-effective manner, we may not be able to generate revenue growth.

We have limited experience marketing and selling Tablo. We currently rely on our direct sales force to sell Tablo in the United States, and any failure to maintain, leverage and optimize our direct sales force will negatively affect our business, financial condition and results of operations. The members of our direct sales force are highly trained and possess substantial technical expertise, which we believe is critical in increasing adoption of Tablo.

77. On May 6, 2024, the Company issued a press release announcing that the FDA had granted 510(k) clearance to TabloCart, stating in relevant part that "Outset has resumed distribution of TabloCart with prefiltration and has product available to ship to customers in the United States."

78. On May 8, 2024, the Company announced its first quarter 2024 financial results in a press release which reported quarterly revenue of $28.2 million, total gross profit of $8.2 million, and a net loss of $39.9 million. The press release provided an optimistic outlook based, in part, on the recent TabloCart FDA approval, stating in relevant part:

"With our recent 510(k) clearance for TabloCart with Prefiltration, 12th consecutive quarter of gross margin expansion and strong sales pipeline growth during the quarter, we are well positioned to capitalize on the $11 billion U.S. dialysis market opportunity," said Leslie Trigg, Chair and Chief Executive Officer. "Tablo's uniquely compelling value proposition continues to resonate with acute- and home-care providers, with significant new customer wins in both settings during the quarter."

\* \* \*

**Full Year 2024 Financial Guidance**

Outset reaffirmed its previously provided guidance for 2024 including revenue of $145 million to $153 million, growing 12% to 18% over 2023, and non-GAAP gross margin in the low-30% range for the full year 2024, exiting the year in the mid-30% range for the fourth quarter.

79. On May 9, 2024, the Company filed with the SEC its Form 10-Q for the period ended March 31, 2024 ("Q1 2024 Form 10-Q"), affirming the previously reported financial results. The report stated, in relevant part, the following concerning the Company's sales practices:

Driving adoption of Tablo in the acute care setting has been our primary focus to date. We have invested in growing our economic and clinical evidence, built a veteran sales and clinical support team with significant expertise, and implemented a comprehensive training and customer experience program. Our experience in the acute care market has demonstrated Tablo's clinical flexibility and operational

versatility, while also delivering meaningful cost savings to the providers. We plan to continue leveraging our commercial infrastructure to broaden our installed base in the acute care market, as well as driving utilization and fleet expansion with our existing customers.

* * *

We primarily sell our solutions through our direct sales organization, which covers most major metropolitan markets in the United States. Our sales organization is comprised of our capital sales team, responsible for generating new customer demand for Tablo, and our clinical sales team, responsible for driving utilization and fleet expansion of Tablo at existing customer sites. In addition, our field service team provides maintenance services and product support to our customers. Our field sales and service teams represent 49% of our total full-time employees as of March 31, 2024. The same sales organization and field service team drive Tablo penetration in both the acute and home markets. We believe the ability to leverage one team to serve both markets will result in significant productivity and cost optimization as we continue to scale our business.

80.     The above statements identified in ¶¶ 63, 65-68, 70-72, 74-79 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Outset lacked the sales team and process to execute on the ramp of Tablo sales; (2) that, as a result of the foregoing, the Company's revenue growth would be adversely impacted; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

81.     On August 7, 2024, after the market closed, Outset released its second quarter 2024 financial results, significantly missing consensus estimates and lowering its full year 2024 outlook, reducing its full year 2024 revenue guidance by $39 million at the midpoint. The press release disclosed the Company would be forced to take "clear steps to improve our execution." Specifically, the press release reported, in relevant part:

> [N]ew console placements were below our expectations and will be lower than we originally forecasted for the year. We are taking clear steps to improve our execution and grow the business over the long term to bring the benefits of Tablo to even more providers and dialysis patients.

* * *

**Second Quarter 2024 Financial Results**

Revenue for the second quarter was $27.4 million compared to $36.0 million in the second quarter of 2023, driven by a decline in product revenue to $19.2 million. Service and other revenue was $8.2 million, an increase of 21.5% compared to $6.7 million in the second quarter of 2023. Recurring revenue from the sale of Tablo cartridges and service increased by 24% as compared to the prior-year period. Total

gross profit was $9.8 million, compared to $7.7 million for the second quarter of 2023.  Total gross margin was 35.7%, compared to 21.4% in the second quarter of 2023.

* * *

**Full Year 2024 Financial Guidance**

Outset now expects 2024 revenue to be approximately $110 million, revised from a prior range of $145 million to $153 million, and non-GAAP gross margin to be in the low-to-mid 30% range, revised from prior guidance in the low-30% range for 2024 and exiting the year in the mid-30% range for the fourth quarter.

82.    On that same date, the Company held its second quarter 2024 earnings conference call announcing the Company's financial results for the quarter.  During that earnings call, Defendant Trigg disclosed the Company would have to undergo "sales team and process restructuring" and would be unable to deliver on a ramp of TabloCart as previously forecast. Specifically, during the earnings call, Defendant Trigg stated:

What we're experiencing is a temporary dislocation of converting the pipeline to revenue on our timeline due to the changes in customer profile and process and the improvements needed in our own sales execution.

* * *

Given the depth and breadth of the sales team and process restructuring, we expect it to take several quarters to fully implement and realize the many benefits that will come from it.  As we look ahead to the second half of the year, we now know it will not be possible to execute this transformation given the expected accompanying disruption while simultaneously delivering on the ramp we previously forecasted.  As a result, we expect the second half of 2024 will look similar to the first half with expected revenue for the year of approximately $110 million.

83.    On this news, the Company's share price fell $2.33, or 68.53%, to close at $1.07 per share on August 8, 2024.

## CLASS ACTION ALLEGATIONS

84.    Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a class, consisting of all persons and entities who purchased or otherwise acquired Outset securities between September 15, 2020, and August 7, 2024, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members

of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

85.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Throughout the Class Period, Outset common stock actively traded on NASDAQ (an open and efficient market) under the symbol "OM."  Millions of Outset shares were traded publicly during the Class Period on the NASDAQ.

86.     Record owners and other members of the Class may be identified from records maintained by Outset or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

87.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

  a. whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

  b. whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

  c. whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, operations, and prospects of Outset;

  d. whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Outset;

  e. whether the market price of Outset securities during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f.      the extent to which the members of the Class have sustained damages and
the proper measure of damages.

88.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

89.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests that conflict with those of the Class.

90.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## UNDISCLOSED ADVERSE INFORMATION

91.    The market for Outset's securities was an open, well-developed, and efficient market at all relevant times.  As a result of the materially false and/or misleading statements and/or omissions particularized in this complaint, Outset's securities traded at artificially inflated prices during the Class Period.  Plaintiff and the other members of the Class purchased Outset's securities relying upon the integrity of the market price of the Company's securities and market information relating to Outset and have been damaged thereby.

92.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Outset's securities, by publicly issuing false and/or misleading statements and/or omitting material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Outset's business, operations, and prospects as alleged herein.

93.    These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's securities to be overvalued and artificially inflated or maintained at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchase the Company's securities at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

94.    As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

95.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Outset, their control over, receipt and/or modification of Outset's allegedly materially misleading statements and omissions and/or their positions with the Company which made them privy to confidential information concerning Outset, participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations and prospects.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

96.    The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false and/or misleading statements pleaded in this complaint.  The statements alleged to be false and/or misleading herein all relate to historical or then-existing facts and conditions.

97.    In addition, to the extent certain of the statements alleged to be false and/or misleading may be characterized as forward-looking, they were not identified as "forward-

looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

98.     Alternatively, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false and/or misleading forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Outset who knew that the statement was false when made.  In addition, to the extent any of the statements set forth above were accurate when made, they became inaccurate or misleading because of subsequent events, and Defendants failed to update those statements which later became inaccurate.

## LOSS CAUSATION

99.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market.  This artificially inflated the prices of Outset's securities and operated as a fraud or deceit on the Class.  When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Outset's stock fell precipitously, as the prior artificial inflation came out of the price.

100.     The economic loss, *i.e.*, damages, suffered by Plaintiff and other Class members was a direct result of Defendants' false and misleading statements and fraudulent scheme to artificially inflate the Company's securities and the subsequent significant decline in the value of the Company's securities when the true facts started to be revealed.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

101.     The market for Outset stock was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this complaint, Outset securities traded at artificially inflated and/or maintained

prices during the Class Period. Plaintiff and other members of the Class purchased the Company's securities relying upon the integrity of the market price of Outset securities and market information relating to Outset and have been damaged thereby.

102. At all times relevant, the market for Outset securities was an efficient market for the following reasons, among others:

      a.     Outset was listed and actively traded on NASDAQ, a highly efficient and automated market;

      b.     The market price of Outset securities reacted promptly to the determination of public information regarding the Company

      c.     As a regulated issuer, Outset filed periodic public reports with the SEC and/or the NASDAQ during the Class Period;

      d.     Outset regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

      e.     Outset was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

103. As a result of the foregoing, the market for Outset securities promptly digested current information regarding Outset from all publicly available sources and reflected such information in Outset's stock price. Under these circumstances, all purchasers of Outset stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

104.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations and prospects—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery.   All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions.   Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

### COUNTS AGAINST DEFENDANTS

#### COUNT I
**Violations of Section 10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder
(Against All Defendants)**

105.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

106.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Outset securities; and (iii) cause Plaintiff and other members of the Class to purchase Outset stock at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

107.    Defendants: (i) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Outset securities in violation of Section 10(b) of the

Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

108. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Outset's business, operations and prospects, as specified herein. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices and a course of conduct as alleged herein in an effort to assure investors of Outset's business, operations and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Outset and its business, operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

109. Each of the Individual Defendants' primary liability and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period and a member of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's business, operations, and prospects; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

110.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Outset's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its securities.   As demonstrated by Defendants' overstatements and misstatements of the Company's business, operations and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

111.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Outset securities was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the market in which the stock trades, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class purchased Outset securities during the Class Period at artificially inflated prices and were damaged thereby.

112.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.   Had Plaintiff and the other members of the Class and the marketplace known of the truth regarding the problems that Outset was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased their Outset securities, or, if they had purchased such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

113.    By virtue of the foregoing, Outset and the Individual Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

114.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**COUNT II**
**For Violations of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

115.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

116.    The Individual Defendants acted as controlling persons of Outset within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

117.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the actions giving rise to the securities violations as alleged herein, and exercised the same.

118.    As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

119.    As set forth above, Outset and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this complaint.  By virtue of their

position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their pre-judgement and post-judgement interest, as well as reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

(d)    Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demand trial by jury of all issues that may be so tried.

Dated:  October 18, 2024                     Respectfully submitted,

                                             **BERMAN TABACCO**


                                             By:   */s/ Nicole Lavallee*
                                                     Nicole Lavallee

                                             Michael Dark
                                             425 California Street, Suite 2300
                                             San Francisco, CA 94104
                                             Telephone: (415) 433-3200
                                             Facsimile: (415) 433-6382
                                             Email: nlavallee@bermantabacco.com
                                                     mdark@bermantabacco.com

                                             *Counsel for Plaintiff and the Proposed Class*